IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| Cecilia A. Dear, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-0036-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Cecilia A. Dear, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, Steven L. Carnes, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff able to perform her past relevant work, and accordingly found her not disabled.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

  As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for

giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff was 58 years old at the time the administrative decision was issued and obtained a twelfth grade education.  The ALJ found the plaintiff has past relevant work experience as a companion, general order clerk, motel desk clerk, secretary, print shop clerk, and office manager.  The plaintiff alleges she is disabled due to chronic obstructive pulmonary disease, cardiac problems, pain in her hip and low back, and depression/anxiety.  The medical evidence demonstrates plaintiff was treated in December 2004 by Dr. Charlie Williams for acute bronchitis, acute asthma bronchitis, and shortness of breath.  Record 184-185.  On December 5, 2004, the plaintiff was admitted to Stringfellow Memorial Hospital.  Record 231-239.  The plaintiff was treated for chronic obstructive pulmonary disease (COPD), acute asthma exacerbation, acute chronic bronchitis, and hypertension.  Record 231-239.  On April 12, 2005, Dr. Williams diagnosed the plaintiff with allergic asthma, benign hypertension, and breast pain. Record 181-182.

On August 1, 2006, the plaintiff received chiropractic treatment for pain in her neck, upper back, and right shoulder after a motor vehicle accident. Record 195-201. The plaintiff was treated on two occasions. Record 195-201. On March 29, 2007, the plaintiff was seen in the emergency room for acute bronchitis and acute influenza. Record 207-210, 224-226. On April 16, 2007, the plaintiff was treated for low back pain after a car accident. Record 258-259. X-rays of the lumbar spine revealed only mild degenerative changes with no acute abnormality. Record 260. On April 20, 2007, the plaintiff was treated at St. Michael's for hypertension and chronic obstructive pulmonary disease/asthma. Record 249-251. On May 15, 2007, the plaintiff was treated by Dr. Mohammed Kamran, a cardiologist. Record 268. On May 21, 2007, catheterization revealed 40% stenosis of the left anterior descending, 80% stenosis of the left circumflex, and 95% stenosis of the right coronary artery. Record 286-287. Destabilization was noted and a temporary pacemaker was placed. Record 334-335.

On August 9, 2007, it was noted that the plaintiff was status post multi-vessel angioplasty using a balloon pump, and that she was doing well. Record 277-278. On August 21, 2007, a stress test was terminated due to fatigue, but revealed no ischemia. Record 275-276. The plaintiff's ejection fraction was 56 percent. Record 283. On October 22, 2007, catheterization revealed 40% stenosis of the left anterior descending, 40% stenosis of the left circumflex, and 40% stenosis of the right coronary artery. Record 332-333.

On January 22, 2008, the plaintiff complained of palpitations and was diagnosed with coronary artery disease and shortness of breath. Record 302-303. On January 29, 2008, the plaintiff was diagnosed with exacerbation of COPD and dyspnea. Record 362-377. A Pulmonary Function Test was normal with a postbronchodilator FEV-l at 81% of predicted. Record 383-387. On February 25, 2008, a catheterization revealed severe two-vessel coronary artery disease. Record 330. It was noted that she had previous catheterization with right coronary artery stenting. Record 330. The plaintiff was also diagnosed with major depression and panic disorder, and was assessed with a GAF of 42.[1] Record 408-409. On August 1, 2008, Dr. Kamran noted no shortness of breath, but the plaintiff reported some palpitations. Record 294-295. On November 25, 2008, the plaintiff was treated for an acute exacerbation of COPD. Record 496-506. On December 9, 2008, the plaintiff was prescribed additional medication for COPD with acute bronchitis. Record 633. Coronary artery bypass grafting was performed. Record 395-407.

On May 13, 2009, the plaintiff was treated for another exacerbation of COPD and was also diagnosed with coronary artery disease, arthritis, and depression. Record 538-553. On June 24, 2009, the plaintiff was treated at the hospital for another exacerbation of COPD. Record 590-613. A left heart catheterization revealed 40-50%

---

[1] A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

stenosis of the left anterior descending, 40% stenosis of the left circumflex, and an occlusion of the graft.  Record 596-597.  Medication management was advised.  Record 596-597.

      The plaintiff's treating cardiologist, Dr. Kamran , wrote a letter on September 6, 2007, giving his opinion as to the plaintiff's ability to work.  That letter states as follows:  "[Patient] has significant coronary artery disease and labile hypertension.  The patient is not able to work.  She is completely permanently disables [sic].  Her coronary artery disease is severely diffused."  Record 638.  Approximately one year later Dr. Kamran wrote another letter in which he stated:  "I have been treating [the patient] from a cardiac standpoint.  The patient is permanently disabled.  Record 637.

      On April 21, 2009, the plaintiff was examined by Dr. Kishin Gehi at the request of the Social Security Administration.  Doctor Gehi diagnosed the plaintiff with COPD; depression/anxiety; low back pain and pain in the hips secondary to arthritis; and a history of coronary artery bypass graft surgery.  Record 340.  On a medical source statement, Dr. Gehi indicated that the plaintiff would be able to sit for a total of three hours, stand for a total of one hour, and walk for a total of 30 minutes in an eight-hour day.  Record 342.

      Rather than relying upon the opinions expressed by the plaintiff's treating cardiologist, Dr. Kamran, and the Commissioner's consultative examiner, Dr. Gehi, the ALJ based his RFC finding upon the opinions expressed by Dr. Evans, a medical expert

who did not examine the plaintiff. The medical expert testified that his opinions were based upon the medical records. However, he cited no particular treatment record or condition that supported his testimony about the plaintiff's ability to sit, stand, walk, lift and carry. Doctor Evans' testimony about the plaintiff's ability to sit, stand, walk elicited at the hearing was as follows:

> Q: All right. Based upon your experience, education and training and your review of the medical record of this case, would you please describe the functional limitations (INAUDIBLE) basis, how long would the claimant be able to sit at anyone period of time?
>
> A: An hour.
>
> Q: In an eight hour day?
>
> A: Eight.
>
> Q: Stand at anyone period of time?
>
> A: Forty-five minutes.
>
> Q: In an eight hour day?
>
> A: Four hours.
>
> Q: Walk at anyone period of time?
>
> A: Fifteen minutes.
>
> Q: In an eight hour day?
>
> A: Two hours.
>
> Q: Frequently lift or carry?
>
> A: Ten pounds.

> Q: Occasionally lift of carry?
>
> A: Twenty.

Record 54-55.

Because Dr. Evans gave no explanation as to why his opinions differed from those of the Commissioner's consultative examiner and the plaintiff's treating cardiologist, it was unreasonable for the ALJ to base his RFC finding on Dr. Evans' testimony. No reasonable fact finder would base an RFC finding on the opinions of Dr. Evans, a nonexamining source, in light of contrary opinions from the plaintiff's treating cardiologist and the Commissioner's consultative examiner. Therefore, the ALJ's RFC finding was not based upon substantial evidence.

The ALJ also did not properly apply the Eleventh Circuit's treating physician rule in rejecting the opinion of Dr. Kamran, the plaintiff's treating cardiologist. The reasons given by the ALJ for rejecting Dr. Kamran's opinion are as follows:

> Based on my review of the evidence [Dr. Kamran] submitted (Exhibits 9F & 10F) I find no support for his summary opinion. More importantly I note that agency guidance directs that the issue of whether a claimant is "disabled" or unable to work, is an issue reserved for the commissioner 20 CFR 404.1527(e) and 416.927(e). Therefore, while I must consider all evidence provided by any medical source, I am not bound by Dr. Kamran's decision as it infringes upon an area reserved to the commissioner. I gave his improper opinion little weight.

Record 16. While it is true that the ALJ is not bound by a treating source's opinion that a claimant "is disabled," such opinions must nevertheless be considered under the Commissioner's regulations:

9

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, <u>we review all of the medical findings and other evidence that support a medical source's statement that you are disabled</u>.

20 CFR 404.1527(e)(1)(emphasis added). In the present case the ALJ did not properly apply this standard. The ALJ summarily asserts that he had reviewed Dr. Kamran's treatment notes and found no support for his opinion in those records. The ALJ did not mention any specific treatment note. Additionally, Dr. Kamran's treatment notes contain test results and other raw medical data concerning the plaintiff's heart disease that the ALJ is not qualified to interpret.[2] In the present case, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ in essence rejected Dr. Kamran's opinion that the plaintiff was disabled based upon his own interpretation of the highly complex medical record relating to the plaintiff's heart disease.

The ALJ also dismissed the RFC finding of his own consultative examiner, Dr. Gehi, without giving good reasons. He rejected Dr. Gehi's findings as follows:

> I disagree with Dr. Gehi's opinion in part. While I agree with his assessment that she is capable of light work, I do not accept his position regarding severe limitations in the amount of time the claimant can walk, stand, or sit; in that regard I gave his opinion little weight. I concur with the estimates of time the claimant can walk, stand, or sit as opined by Dr. Evans which inducates [sic] the claimant can perform a full range of light work activity with other exertional and non-exertional restrictions. Based on the

---

[2] Even though the ALJ utilized a medical expert at the hearing, he did not ask the expert to interpret or explain Dr. Kamran's treatment notes. Nor did he ask the medical expert to point to specific treatment notes that supported his testimony about the plaintiff's physical capacity to sustain light work.

10

> examination performed by Dr. Gehi as well as the results of the x-rays, I
> find that the claimant is capable of light work with the limitations I set forth
> in my assessment of her residual functional capacity.

Record 16.  Rather than accept the RFC opinion of Dr. Gehi, (who the Commissioner engaged to examine the plaintiff and to give his opinion as to her abilities) the ALJ chose to "disagree" with Dr. Gehi and "concur" with the opinions of Dr. Evans, who never examined the plaintiff.[3]  Substantial evidence does not support the ALJ's rejection of Dr. Gehi's opinions.  Dr. Gehi's RFC is buttressed by Dr. Kamran's opinion that the plaintiff is disabled, and together their opinions that the plaintiff is unable to engage in full time work far outweigh the summary conclusions contained in Dr. Evans' testimony.  No reasonable fact finder would rely upon such evidence to discredit the plaintiff's treating cardiologist and the Commissioner's consultative examiner.  The overwhelming evidence of record is that the plaintiff is unable to sustain full time work.  The plaintiff's treating cardiologist opined the plaintiff was disabled and the Commissioner's consultative examiner opined she would only be able to work four and one half hours in an eight-hour day.  The ALJ's refusal to credit Dr. Gehi and Dr. Kamran is not supported by substantial evidence.

       It is the Commissioner's position in this circuit that only an ability to do full-time work will prevent a finding of disabled at step five.  Kelly v. Apfel, 185 F.3d

---

[3] Earlier in his decision, the ALJ inexplicably states that Dr. Evans offered "basically the same opinion" as Dr. Gehi.  Record 19.  This is in spite of the fact that Dr. Gehi opined the plaintiff could only sit, stand and walk for a total of four and one half hours in an eight-hour work day, in contrast to Dr. Evans who opined the plaintiff could work for an entire eight-hour day.

1211, 1214 (11th Cir. 1999) ("In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.") The Kelly court noted that this position is based upon Social Security Ruling 96-8p:

> That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96-8p. "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." Id.

Kelly, 185 F.3d at 1214. Therefore, if a claimant cannot perform his prior work, and is unable to sustain full-time work, he must be found disabled at step five.

Social Security Ruling 96-8p also applies to considerations of a claimant's RFC at step four. However, an ability to work eight hours a day for five days a week is not necessarily required:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

SSR 96-8p, n. 2. But, if the claimant's RFC is below that required by his or her past relevant work, and is also insufficient to allow sustained full time work, a finding of disabled is compelled by the application of SSR 96-8p.

In the present case, there is no evidence the plaintiff would be able to perform any of her past relevant work if she were limited to a total of four and one half

hours of work during the normal workday.  Accordingly, because the overwhelming evidence establishes the plaintiff is unable to perform full time work, she is disabled within the meaning of the Social Security Act.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.  An appropriate order will be entered contemporaneously herewith.

       DONE and ORDERED 9 August 2011.

                                    UNITED STATES DISTRICT JUDGE
                                            J. FOY GUIN, JR.